[Cite as *Cleveland v. Brown*, 2024-Ohio-1782.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 113084 |
| v. | : | |
| ARLIN BROWN, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** DISMISSED
**RELEASED AND JOURNALIZED:** May 9, 2024

Criminal Appeal from the Cleveland Municipal Court
Case No. 2022-CRB-009440

***Appearances:***

Mark Griffin, Cleveland Director of Law, Aqueelah A. Jordan, Chief Prosecuting Attorney, and Michael Ferrari, Assistant Prosecuting Attorney, *for appellee.*

Leif B. Christman, *for appellant.*

FRANK DANIEL CELEBREZZE, III, J.:

{¶ 1} Arlin Brown ("Brown") brings the instant appeal challenging the trial court's judgment dated July 11, 2023, that reduced one of Brown's community-control sanctions. After a thorough review of the relevant facts and law, this court dismisses the appeal for lack of a final, appealable order.

## I. Factual and Procedural History

{¶ 2} On November 6, 2022, the city of Cleveland ("Cleveland") charged Brown with domestic violence in violation of R.C. 2919.25, a first-degree misdemeanor, and unlawful restraint in violation of Cleveland Codified Ordinances 621.08, a third-degree misdemeanor. The charges stemmed from an altercation in downtown Cleveland, where Brown was accused of shoving the victim, his then-wife, to the ground, dragging the victim to their shared vehicle, and refusing to allow her to leave. The victim sustained an abrasion.

{¶ 3} One day later, Brown pled not guilty to both charges and was placed on court-supervised release. The court also entered a no-contact order forbidding contact with the victim. At a pretrial on November 30, 2022, Cleveland and Brown entered into a plea agreement. The domestic violence charge was amended to assault in violation of R.C. 2903.13, and the unlawful restraint charge was nolled. Brown pled guilty to the assault charge and was referred for a presentence investigation.

{¶ 4} On December 13, 2022, Brown filed a motion asking the court to lift the no-contact order. In the motion, Brown argued that "the alleged victim * * * is in agreement with lifting the No Contact Order and alleges that she is not in any threat of physical harm or danger and would request that the No Contact Order be lifted."

{¶ 5} On December 21, 2022, the trial court sentenced Brown. At the hearing, Brown's counsel asked that the court refrain from sentencing Brown to jail time, noting that Brown had been attending classes at North Star Neighborhood Reentry,

shares seven children with the victim, is employed and supports the children, and that Brown had "been a law-abiding citizen for approximately the last 20 years." (Tr. 5, 12/21/2022.)

{¶ 6} The trial court took issue with Brown's claim that he had been a law-abiding citizen for the past 20 years. The court cited offenses for underage possession, drug paraphernalia, falsification, breaking and entering, tampering with records, receiving stolen property, numerous traffic offenses, menacing, and obstruction of justice. The court noted that the most recent offense occurred in 2010.

{¶ 7} The court sentenced Brown to 180 days in jail, all of which were suspended; fines and costs; and three years of community-control supervision. His community-control supervision included the following specific conditions: (1) complete parenting classes, (2) domestic intervention education and training ("DIET"), (3) 60 hours of community work service, (4) abide by the existing no-contact order, and (5) "alcohol/drug screen follow recomm, no contact w/ victim/children until court approval."

{¶ 8} On January 17, 2023, Attorney Leif Christman ("Christman") entered a notice of appearance on behalf of Brown and immediately filed a motion to "modify conditions of probation," asking the court to lift the no-contact order as it applied to Brown's children and remove the requirement that he complete a parenting class. Brown argued that these sanctions relating to his children were unrelated to the underlying offense that was not committed in the presence of or against the children.

{¶ 9} On February 28, 2023, at a virtual hearing on the motion, Christman explained that he believed these sanctions were "afield of the court's power." (Tr. 6, 2/28/23.) The trial court countered that

> [t]he Probation Report indicates that he has violated the No Contact Order already.
>
> As of January 23rd of this year there's a new police report from Grafton, Ohio for telecommunications harassment.
>
> * * *
>
> It says that the Victim had 20 screenshots of him contacting her and the children no sooner than he was placed on probation.
>
> In addition, he's having other people contact her on his behalf.
>
> What I should be doing is putting him in jail. That's what I should be doing * * *.

(Tr. 7-8, 2/28/23.)

{¶ 10} At the hearing, Brown, through Christman, also argued that a three-year no-contact order with his children was unreasonable, and the court clarified that the no-contact order was not for three years and that the court would lift the order earlier if Brown complied with the terms of his community control. The court denied the motion to modify community control and set a community-control progress hearing for March 9, 2023.

{¶ 11} At the March 9 hearing, Brown, through Christman, verbally renewed his motion to modify the terms of community control, which the court rejected again, explaining that (1) the no-contact order was not for a definite period of three years, but only until further notice of the court; (2) Brown had already violated the

no-contact order; and (3) the victim had separately filed a civil protection order in another court, so she did not feel comfortable lifting the no-contact order.

{¶ 12} The court explained that there "wouldn't be any reason for [it] to change an order that he's not abiding by already" and stated that it was going to take Brown "into custody today," due to the violation. (Tr. 6.) Brown objected, noting that he had not received proper notice of the violation and that he was not provided with documentation reflecting these violations so that he could adequately prepare for a community-control-sanctions-violation hearing.

{¶ 13} The trial court agreed with Brown and continued the matter, but remanded Brown to jail for seven days and set the continued community-control-sanctions-violation hearing for March 14, 2023. Brown was processed and taken into custody at the close of the hearing.

{¶ 14} On March 10, 2023, Brown filed a "motion for immediate bail pending further proceedings." The motion argued that Brown is a train bridge operator for Norfolk Southern Railroad and was at risk of losing his job, which would "devastate his ability to provide financial support for his seven children."

{¶ 15} On March 14, 2023, the court held the violation hearing where Christman relayed that he had been in contact with Brown's employer and hoped that Brown could make his shift tonight, so that he could remain employed. The court discussed Brown's disobedience of the no-contact order and acknowledged that Brown had successfully completed the parenting portion of community control.

{¶ 16} The court released Brown from jail and stated that it was not going to consider modifying or amending the no-contact order because Brown and the victim were beginning divorce proceedings, which often involve no-contact orders, visitation with children, and custody of children. The court noted that "there's a protection order being requested through Domestic Relations Court. * * * I'm not gonna lift the no contact order until Domestic Relations Court tells me what they're doing." (Tr. 5-6, 3/14/2023.) The trial court clarified that "it doesn't make [sense] for me to lift it and then for you to violate [the Domestic Relations Court's] order, if there's one in place or will be one in place." (Tr. 6, 3/14/2023.) The court noted, however, that if it lifted the no-contact order, "[y]ou will not have any contact with [the victim], it will be through [a] third-party." (Tr. 6, 3/14/2023.)

{¶ 17} The court scheduled a virtual hearing for April 12, 2023. There is no transcript of this hearing, but the record indicates that Brown did not appear. The trial court issued a failure to appear warrant and set bond at $50,000.

{¶ 18} Unbeknownst to the court, Christman had filed an affidavit of disqualification in the Ohio Supreme Court on April 5, 2023, which is why Brown and Christman had not appeared for the hearing. Christman sought to disqualify the trial judge from this matter. In accepting the affidavit of disqualification, the Ohio Supreme Court ordered that "[e]xcept as provided in R.C. 2701.03(D)(2) through (4), [the trial court] is deprived of any authority to preside in the proceeding until the Chief Justice rules on the affidavit." The docket indicates that the trial court did not receive the affidavit of disqualification until April 14, 2023, after the warrant

was issued. As a result, Brown filed a motion to quash the outstanding warrant, which the trial court granted and recalled the warrant.

{¶ 19} In June 2023, the Ohio Supreme Court denied Christman's affidavit of disqualification, noting that "Christman has failed to establish that [the trial judge] is biased or prejudiced against him or Brown or that the judge cannot be impartial and open-minded in Brown's case."

{¶ 20} On July 11, 2023, the court held a community-control-sanctions-violation hearing. The allegations of the alleged violation are not part of the record, and it does not even appear that a violation was discussed. Nonetheless, at the hearing, Brown presented documents from his divorce proceedings, indicating that the civil protection order had been voluntarily dismissed by the victim and that the parties had finalized an agreement for shared parenting of the children.

{¶ 21} As for Brown's compliance with community control, it was discussed that Brown had been able to maintain his employment, which was necessary to make his child support payments. He had also begun completing DIET and planned to complete his community service hours after completing DIET. Brown, through counsel, asked that the court "continue Mr. Brown on supervision and that he be allowed to continue on the path that he's established here." (Tr. 5, 7/11/2023.)

{¶ 22} The court responded that Brown "can have third party visitation with [his] children. That means you contact somebody else to visit with them. The no contact order, regarding [his] wife or soon to be ex-wife remains in effect." (Tr. 5,

7/11/2023). The trial court journalized the same, lifting the no-contact order to allow third-party contact with the children.

{¶ 23} On August 15, 2023, Brown filed a notice of appeal from the order that the trial court journalized after the July 11, 2023 hearing, asserting one error for our review:

> The trial court erred in re-imposing, and denying Mr. Brown's motion to eliminate, a probation condition restricting contact with his children.

## II. Law and Analysis

{¶ 24} After Brown filed the instant appeal, this court asked the parties to brief whether the trial court's order following the July 11, 2023 hearing was a final, appealable order.

{¶ 25} Our appellate jurisdiction is limited to reviewing judgments and orders that are final, appealable orders. *See* Ohio Constitution, Article IV, Section 3(B)(2). R.C. 2505.02(B) defines the types of orders that are final, appealable orders. In criminal cases, the sentencing entry typically constitutes the final order from which a party may appeal. *See, e.g., Columbus v. Taylor,* 39 Ohio St.3d 162, 165, 529 N.E.2d 1382 (1988); *State v. Hunt*, 47 Ohio St.2d 170, 174, 351 N.E.2d 106 (1976); *State v. Chamberlain*, 177 Ohio St. 104, 107, 202 N.E.2d 695 (1964). This judgment must be appealed within thirty days. App.R. 4(B).

{¶ 26} In his supplemental briefing, Brown did not argue that the July 11, 2023 order fell into any of the R.C. 2505.02(B) categories. Instead, Brown distinguished his case from *State v. Ogle*, 4th Dist. Hocking No. 14CA17, 2014-Ohio-

4868, and *State v. Senk*, 8th Dist. Cuyahoga No. 88524, 2007-Ohio-3414. Brown also cited to *Cleveland v. Cornely*, 8th Dist. Cuyahoga No. 109556, 2021-Ohio-689, that addresses a fact pattern similar to the fact pattern in the instant appeal. We address each case in turn.

{¶ 27} *Ogle's* procedural posture indicates that Ogle had been sentenced to community-control sanctions and sought to have them terminated as unlawfully imposed, which the trial court overruled. *Id.* at ¶ 3. The Fourth District determined that "Ogle's motion to terminate her community control is an attempt to correct or modify her sentence, and the denial of such motion is not a final, appealable order." *Id.* at ¶ 7. As a result, the *Ogle* Court dismissed the appeal for lack of a final, appealable order. In so holding, the *Ogle* Court cited to cases from the Third, Fifth, Eighth, Ninth, and Twelfth Districts that came to similar conclusions regarding the denial of a motion to modify or terminate community-control sanctions. *Id.* at ¶ 6.

{¶ 28} The Eighth District case that *Ogle* cites and that Brown distinguishes his case from, *Senk*, was also a domestic-violence case. In *Senk*, defendant Senk was sentenced to six months in prison, which were to be served consecutive to prison terms imposed in two other felony cases. *Id.* at ¶ 3. Six years later, Senk filed a "motion to correct improper sentence," arguing that the trial court's imposition of consecutive sentences was improper. The trial court denied the motion, and Senk appealed, which this court dismissed for lack of a final, appealable order. *Id.* at ¶ 18. In so reasoning, this court explained that "it is evident that Senk is attempting to

attack his sentence collaterally by appealing the trial court's denial of his motion to correct sentence." *Id.*

{¶ 29} Finally, Brown directs us to *Cornely*. Cornely pled guilty to domestic violence. *Id.* at ¶ 2. As in this case, Cornely was sentenced to community control, DIET, 60 hours of community service, and ordered to maintain the court's previously imposed no-contact order against his wife and children. *Id.* at ¶ 5. As in this case, Cornely filed a motion to terminate or modify the terms of the no-contact order to allow him to see his children. *Id.* at ¶ 1. We, however, must address a key distinction in *Cornely*.

{¶ 30} The Ohio Supreme Court has intimated that taking judicial notice of public court records available on the internet is permissible. *State ex rel. Everhart v. McIntosh*, 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 8. A review of the docket in *Cornely* indicates that the original sentencing entry that imposed the community-control sanctions did not contain the fact of conviction necessary to make the order final and appealable pursuant to *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142. This court remanded *Cornely* to the Cleveland Municipal Court to issue a final, appealable order. Thus, *Cornely* was a direct appeal of the original sentence, which had not become a final, appealable order until this court remanded it.

{¶ 31} Here, Brown reads the order as reimposing community-control sanctions. However, it is clear from the record that the trial court intended to continue Brown's community-control sanctions as originally imposed. The trial

court did not reimpose community control; it lessened the community-control restrictions and allowed Brown to engage in "third party visitation" with his children.

{¶ 32} We also note that at the time of the July 11, 2023 hearing, there were no pending motions before the trial court; the trial court denied Brown's motion to modify following the February 28 and March 9, 2023 hearings. Further, the motion was not renewed at the July 11, 2023 hearing. In fact, Brown asked the court to continue his community-control sanctions to allow him time to complete them — which is exactly what the trial court did. Though no formal motion was made, Brown presented documents from his divorce proceedings to the court, and the court was persuaded that Brown was eligible to engage in third-party visitation with his children. This is exactly what the trial court promised that it would do after determining how the divorce proceedings were progressing because it did not want to interfere with the domestic relations court's jurisdiction.

{¶ 33} Pursuant to *Ogle* and *Senk,* we find that the trial court's July 11, 2023 order removing a portion of Brown's sanction was not a final, appealable order that we have jurisdiction to review.

{¶ 34} Accordingly, we dismiss Brown's appeal for lack of a final, appealable order.

## III. Conclusion

{¶ 35} The trial court's July 11, 2023 judgment was not a final, appealable order from which Brown could appeal. This court therefore lacks jurisdiction to consider Brown's arguments stemming therefrom.

{¶ 36} Accordingly, the appeal is dismissed.

It is ordered that appellee recover from appellant costs herein taxed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, JUDGE

EILEEN T. GALLAGHER, P.J., and
SEAN C. GALLAGHER, J., CONCUR